United States District Court
Southern District of Texas
**ENTERED**
October 02, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| DR. LINDA KENNEY, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:26-cv-00076 |
| | § | |
| UNIVERSITY OF TEXAS MEDICAL BRANCH, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before me is a motion to dismiss filed by Defendant The University of Texas Medical Branch ("UTMB"). *See* Dkt. 13. Having reviewed the briefing, the record, and the applicable law, I recommend that the motion be granted.

**BACKGROUND**[1]

The plaintiff in this case is Dr. Linda Kenney. In 2019, Kenney and her husband, Dr. Michael Sheetz, joined UTMB's Department of Biochemistry and Molecular Biology where they operated a joint lab together.

In October 2020, Sheetz and three other inventors signed a UTMB Invention Disclosure Form describing an invention to which they had all contributed.

In September 2024, UTMB informed Sheetz that it was shutting down the lab and froze the joint lab's accounts. Sheetz signed a "ramp down" agreement with provisos. According to Kenney, the interim head of the department told a new faculty member that the purpose of the "ramp down" agreement and freezing the accounts was to push Sheetz out because he was too old. Kenney claims to have

[1] The facts in this section are taken from Plaintiff's First Amended Complaint, which is the operative pleading. *See* Dkt. 10. At the motion to dismiss stage, I accept "all well-pleaded facts as true." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 948 F.3d 673, 675 (5th Cir. 2020) (quotation omitted).

opposed this conduct as discriminatory through internal communications with UTMB.

Sheetz died on January 30, 2025. After Sheetz's death, Kenney requested that she take over instruction of Sheetz's students. Instead, UTMB administration assigned Sheetz's students to male instructors who were allegedly less qualified and less senior to Kenney. Kenney claims to have opposed this discriminatory conduct through internal communications with UTMB.

In March 2025, UTMB offered Kenney a separation agreement and placed her on administrative leave.

On April 4, 2025, Kenney submitted a sworn charge of discrimination to the Equal Employment Opportunity Commission ("EEOC"), alleging that UTMB had discriminated against her on the basis of sex and age, and had retaliated against her for opposing age discrimination against her late husband. That same day, UTMB's counsel informed Kenney's counsel that UTMB was the owner of samples in Kenney's possession. UTMB demanded the return of the samples and represented that UTMB would hold the samples and that no one would be able to use them until an academic review was conducted to determine who has the right to work on said samples.

By April 28, 2025, Kenney and UTMB had entered into a Settlement Agreement and Full and Final Release of All Claims (the "Settlement Agreement"). As part of the Settlement Agreement—in which Kenney released all claims arising out of her employment with UTMB, subject to a property-dispute carveout—Kenney's counsel wrote to the EEOC to withdraw Kenney's charge of discrimination.

On June 26, 2025, Kenney's counsel sent UTMB's counsel a letter identifying Kenney's property that UTMB should return. Among the property identified in the letter were certain bacterial strains, plasmid DNA, antibodies, and other items currently stored in Kenney's -80° freezer. On July 2, 2025, Kenney's counsel sent UTMB photos of all the property at issue.

On July 7, 2025, UTMB's counsel emailed Kenney's counsel asking about a manuscript and when/if Kenney would identify a journal for submission or whether Kenney would grant another employee, Dr. Desai, permission to pursue publication of the manuscript. Kenney's counsel responded, raising concerns about publishing issues and asserting that UTMB was attempting to interfere with Kenney's academic freedom. Kenney's counsel requested written assurance that UTMB would return Kenney's property.

On July 8, 2025, Kenney's counsel again demanded the return of Kenney's property.

On July 17, 2025, Kenney's counsel informed UTMB that Kenney would not grant Desai publishing rights.

On July 18, 2025, UTMB identified to Kenney's counsel certain property that it refused to transfer to Kenney. Kenney's counsel reiterated to UTMB's counsel that UTMB should not permit Desai to try to publish Kenney's work.

On October 8, 2025, UTMB's counsel informed Kenney's counsel that because UTMB did not receive requests for transfer from Kenney by October 3, 2025, UTMB assumed Kenney was no longer interested in the items and that UTMB would move forward with clearing out the lab space.

On November 11, 2025, Kenney's counsel told UTMB's counsel that Kenney had provided a comprehensive list and was almost complete with her efforts to submit other necessary documentation for transfer.

On November 18, 2025, Kenney provided a Material Transfer Agreement to UTMB for transfer of property to The University of Utah. After many months, UTMB had still not turned over the property to Kenney, so she filed a second EEOC charge on December 12, 2025, asserting that UTMB was retaliating against her by refusing to return her property to her and by pressuring her to allow another academic to publish her work.

On January 9, 2026, the EEOC provided Kenney with a notice of right to sue letter. Kenney then instituted this lawsuit against UTMB on March 11, 2026,

asserting a single claim for retaliation under Title VII of the Civil Rights Act of 1964. On June 25, 2026, Kenney filed her first amended complaint, which is the operative pleading. *See* Dkt. 10. UTMB now moves to dismiss, arguing that Kenney's Title VII claim is a breach of contract claim in disguise, for which UTMB enjoys sovereign immunity; that her property claims are moot and that Kenney lacks Article III standing because she cannot show a property interest in the property at issue; and that Kenney fails to state a claim on which relief can be granted. I need only address the latter of these issues.[2]

## LEGAL STANDARD

A defendant may move to dismiss a complaint when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Conversely, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point

[2] Ordinarily, I would address threshold jurisdictional issues like sovereign immunity, mootness, and Article III standing before addressing the merits. "When the issue of jurisdiction is intertwined with the merits, however, the court 'must assume jurisdiction and proceed to the merits' of the plaintiff's claims under Rule 12(b)(6)." *Sw. Airlines Pilots Ass'n v. Sw. Airlines Co.*, 120 F.4th 474, 481 (5th Cir. 2024) (quoting *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1030 (5th Cir. 2022)). Here, because the court's subject matter jurisdiction derives from the same statute as the cause of action—Title VII—and because the question of whether Kenney has stated a Title VII claim is the first element of the jurisdictional question, jurisdiction is intertwined with the merits. *See Pickett*, 37 F.4th at 1031. Accordingly, I must proceed to the merits.

of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (cleaned up).

I accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Cummings*, 948 F.3d at 675 (quotation omitted). I "do not, however, accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Benfield v. Magee*, 945 F.3d 333, 336–37 (5th Cir. 2019) (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

To state a claim for Title VII retaliation, Kenney must allege: "(1) [s]he engaged in conduct protected by Title VII; (2) [s]he suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Hudson v. Lincare, Inc.*, 58 F.4th 222, 231 (5th Cir. 2023) (quotation omitted).

I will assume without deciding that: (1) Kenney has a property interest in all the property at issue; (2) UTMB's refusal to return said property constitutes an adverse employment action; and (3) Kenney's settlement agreement with UTMB, in which she released all claims concerning her employment, does not bar her claim for retaliation occurring *after* the settlement agreement was executed. Even with all these assumptions in Kenney's favor, Kenney has not alleged a causal nexus between her protected activity (filing an EEOC charge on April 4, 2025) and UTMB's refusal to return the property at issue.

On April 25, 2025, Kenney signed the Settlement Agreement releasing:

> All claims and causes of action arising out of or in any way connected with, directly or indirectly, Kenney's employment with UTMB, or any incident thereof, including, without limitation, her treatment by UTMB; the terms and conditions of her employment; her termination, and her compensation, benefits, or payments received or that should have been received during or subsequent to this employment[.]

Dkt. 13-1 at 6.[3] Kenney also expressly released claims for "retaliation" and claims arising under "Title VII." *See id.* at 5. "[A]n employee may validly release . . . those Title VII claims arising from discriminatory acts or practices which antedate the execution of the release." *Rogers v. Gen. Elec. Co.*, 781 F.2d 452, 454 (5th Cir. 1986) (quotation omitted). Kenney does not argue that the Settlement Agreement is invalid or that she should not be held to its terms. Accordingly, Kenney cannot assert a retaliation claim for any conduct *before* April 25, 2025.

In her response, Kenney clarifies that the only retaliatory conduct she is alleging is "UTMB's selective nonperformance of the Settlement Agreement." Dkt. 19 at 6. But when Kenney executed the Settlement Agreement with UTMB on April 25, 2025, she was already aware that UTMB asserted ownership over samples that she believes belong to her. *See* Dkt. 10 at 3 ("In April 2025, UTMB counsel informed Dr. Kenney's counsel that UTMB was the owner of 'samples' in Dr. Kenney's possession."). Indeed, when executing the Settlement Agreement, the parties reserved "their rights to seek recovery of possession and ownership of such property." Dkt. 13-1 at 6. Kenney executed the Settlement Agreement with full knowledge that property ownership had *not* been resolved. Against this backdrop, UTMB's adherence to its previously asserted ownership position—a position the parties left unresolved in the Settlement Agreement—does not plausibly support an inference that UTMB is withholding property because Kenney filed an EEOC charge.

## CONCLUSION

For the reasons discussed above, I recommend that UTMB's motion to dismiss (Dkt. 13) be granted.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R.

[3] Because the settlement agreement, which UTMB has provided in connection with its motion to dismiss, is referenced in Dr. Kenney's complaint and central to her claims, I may consider it without converting UTMB's motion to dismiss into a motion for summary judgment.

Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 2nd day of October 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE